No. 2502

Second Circuit

BANK OF COUSHATTA v. WILLIAMS
TERRELL & CHANDLER v. WILLIAMS

(April 5, 1929. Opinion and Decree.)

Nettles & Bethard, of Coushatta, attorneys for plaintiffs, appellants.

Barnette & Roberts, of Shreveport, attorneys for defendant, appellee.

REYNOLDS, J. Plaintiff, Bank of Coushatta, on September 12, 1924, commenced this action against defendant, R. L. Williams, to recover judgment on a promissory note for $1,000 signed by him, dated October 23, 1922, payable to the order of Terrell & Chandler on October 15, 1923, bearing interest at the rate of eight per

cent from its maturity until paid, and stipulating payment of ten per cent attorney's fees, and by the payee indorsed in blank.

And on October 17, 1923, plaintiff, Terrell & Chandler, a partnership composed of G. A. Terrall and H. C. Chandler, commenced this action against defendant, R. L. Williams, to recover judgment on a promissory note for $1,000 signed by him, dated October 15, 1922, payable to the order of Terrell & Chandler on October 15, 1923, bearing interest at the rate of eight per cent per annum from its maturity until paid, and stipulating payment of ten per cent attorney's fees.

Defendant interposed the defense of failure of consideration to both suits, and, in addition, alleged that the Bank of Coushatta was not a holder in due course.

By agreement of all parties, the cases were consolidated. And one judgment, rejecting the demands of both plaintiffs and dismissing both suits, was rendered.

Both plaintiffs appealed and joined in one appeal bond. We also shall dispose of both cases in one opinion and judgment.

## OPINION.

By written contract, dated October 30, 1922, T. A. Wilkinson leased to Terrell & Chandler a certain farm for the years 1923, 1924, and 1925; the price being $1,500, represented by three promissory notes signed by the lessee, each for $500, all bearing the same dates as the contract, payable, respectively, October 15, 1923, October 15, 1924, and October 15, 1925, and all bearing interest at the rate of eight per cent per annum from maturity until paid and stipulating payment of ten per cent attorney's fees.

This lease was filed for record at 4 o'clock p. m. on November 8, 1922, and recorded on July 15, 1925.

And by written contract, dated November 8, 1922, Terrell & Chandler leased the same farm to R. L. Williams for the same years; the price being $3,000, represented by three promissory notes of the lessee for $1,000 each, all bearing date October 23, 1922, and payable, respectively, October 15, 1923, October 15, 1924, and October 15, 1925, and all bearing interest at the rate of eight per cent per annum from maturity until paid, and stipulating payment of ten per cent attorney's fees.

This lease apparently was never filed for record.

On November 3, 1922, Crawford, Jenkins & Booth, Limited, instituted suit against T. A. Wilkinson in the district court of Red River parish, in which parish the land lay, to obtain judgment against him for $2,358.73, and interest, and, in aid thereof, upon making affidavit and giving bond according to law, procured the issuance of writs of attachment against the property of T. A. Wilkinson, and, on November 4, 1922, the sheriff, acting under the writs of attachment, seized and took into his possession the leased premises; and such proceedings were had in that action that, on January 13, 1923, judgment was rendered in favor of Crawford, Jenkins & Booth, Limited, and against T. A. Wilkinson for the debt sued for and sustaining the writs of attachment, and decreeing Crawford, Jenkins & Booth, Limited, to have a privilege on the seized property dating from the levy of the writs, for the satisfaction of the judgment, and ordering the property sold for that purpose.

Notice of the pendency of the action, pursuant to Act No. 22 of 1904, had been filed on November 3, 1922.

A writ of fieri facias was issued on the

judgment and the property advertised for sale and sold on March 10, 1923, to Crawford, Jenkins & Booth, Limited, and on the same day a deed from the sheriff to them conveying the property sold was executed, and on March 31, 1923, it was filed for record.

The record is voluminous, but the only question presented for our determination is whether defendant, the lessee, can attack the title of Terrell & Chandler, plaintiff, to avoid payment of the rent?

Appellants say, in brief:

"Since the record shows that Mr. Williams, the defendant, went into possession of the 'Wilkinson' place as the lessee of Chandler & Terrell, the plaintiff, and remained in the actual possession of the premises during the years 1923 and 1924 —the years for which rent is claimed—and as the answer and defence of the defendant is solely based upon the fact that defendant concludes that Crawford, Jenkins & Booth, Limited, a Shreveport corporation that is not a party to the suit, is the owner of the premises, and, by virtue of such ownership, entitled to the rents and revenues derived therefrom, the only question at issue, therefore is:

"Can defendant, the lessee, attack the title of Terrell & Chandler, plaintiff, to avoid the payment of rent?"

And they cite many authorities in support of the proposition that a tenant is estopped to deny his landlord's title.

The authorities cited have no application to the facts of this case.

As we appreciate the issue presented by the pleadings and evidence, defendant denies that Terrell & Chandler put him in possession of the leased premises, and contends that, if they did so, then they failed to maintain him in possession, and that, by reason of the proceedings had in the suit of Crawford, Jenkins & Booth, Limited, against T. A. Wilkinson, both his own tenancy and right of occupancy and the tenancy and right of occupancy of Terrell & Chandler were terminated, and both the title to and right of occupancy of the premises passed to Crawford, Jenkins & Booth, Limited, and that, in order to avoid election by Crawford, Jenkins & Booth, Limited, he was compelled to attorn, and did attorn, to them.

The suit of Crawford, Jenkins & Booth, Limited, against T. A. Wilkinson, was instituted on November 3, 1922, and the premises seized under the writs of attachment in that action on November 4, 1922.

At that time neither the lease from T. A. Wilkinson to Terrell & Chandler nor the lease from the latter to R. L. Williams was filed for record. Therefore both contracts were null and void quoad Crawford, Jenkins & Booth, Limited.

"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.

"The recording shall have effect from the time when the act is deposited in the proper office, and endorsed by the proper officer." Civil Code, art. 2266.

"It shall be the duty of the recorder to endorse on the back of each act deposited with him the time it was received by him, and to record the same without delay in the order in which they were received; and such acts shall have effect against third persons only from the date of their being deposited in the office of the parish recorders." Civil Code, art. 2254. Schneidau vs. New Orleans Land Co., 132 La. 264, 61 So. 225.

With regard to putting Williams in possession of the premises under the lease, Chandler testified:

"Q. Mr. Chandler, you say that you put Mr. Williams in possession of this property. Did you personally put him on that place?

"A. Mr. Terrell and I together did, yes, sir.

"Q. What did you have to do with it?

"A. What did we have to do with it?

"Q. Yes?

"A. Well, signing the contracts, and all that.

\* \* \*

"Q. Now let's get back to putting Mr. Williams in possession. How did you put Mr. Williams in possession?

"A. Well, by signing the lease and the notes, or, in other words, like we were doing business down there and I just say: 'Well, we have leased from T. A. Wilkinson and we will sublease to you; go ahead and move on it.'

"Q. That is it! You just authorized him to move on it?

"A. Certainly."

\* \* \*

Inasmuch as the land was at this time in custodia legis under the writs of attachment, manifestly it was impossible for Terrell & Chandler legally to put Williams in possession or Williams legally to take possession of it.

Williams, however, ignorant of the seizure, did attempt to take possession, and was stopped by Crawford, Jenkins & Booth, Limited.

He testified:

"Q. Well, Mr. Williams, did you go and move on this place before Crawford, Jenkins & Booth, Limited, seized it?

"A. No, sir; I was moving.

"Q. You had not gotton into possession of the property ahead of the seizure?

"A. Well, I had some of my stuff over there. I was moving my corn; I had some of my stuff there.

\* \* \*

"Q. All right. Did they require you to enter into a lease contract with them before they consented for you to complete moving on the place?

"A. They did.

"Q. Did you then enter into a lease contract with them?

"A. I did.

"Q. Have you paid them rent for 1923?

"A. Why, I suppose they got it.

"Q. Yes—and the same for 1924?

"A. Yes, sir.

"Q. Now, did you report to Terrell & Chandler the fact that Crawford, Jenkins & Booth, Limited, had required of you to make some arrangement before you could use the place?

"A. I did, to Mr. Terrell.

"Q. Did he do anything about it?

"A. Not a thing; he never did tell me what he was going to do about it. I asked Mr. Chandler once or twice what about it, and he said he didn't know, and that was the last about it.

"The lessor is bound from the very nature of the contract, and without any clause to that effect:

"1. To deliver the thing leased to the lessee. \* \* \*

"3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease." Civil Code, art. 2692.

"If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease." Civil Code, art. 2696.

Williams' lessors having failed to put him in possession of the leased premises and to maintain him in peaceable possession thereof after he demanded that his lessor do so, it was both his right and duty to minimize his damages resulting from their breach of contract by leasing the property from Crawford, Jenkins & Booth, Limited.

"Where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it, it is his duty to do it. \* \* \*" Armistead vs. Shreveport, etc., R. Co., 108 La. 171, 32 So. 456.

That the seizure and sale of the leased premises canceled the lease and terminated the relation of landlord and tenant between the lessor and lessee is well settled in the jurisprudence of Louisiana.

In Wood vs. Sala y Fabrigas, 105 La. 1, 29 So. 367, the Supreme Court held a les-

see, on being sued for the rent, had the right to show eviction from part of the leased premises and demand a proportionate reduction of the rent.

And therefore, where a lessee is evicted from the whole of the leased premises, he is entitled to be released from payment of any part of the rent.

The syllabus of Summers vs. Clark, 30 La. Ann. 436, reads as follows:

"A judgment creditor who seizes under execution leased property belonging to his debtor, and held by the lessee under a lease not recorded, becomes entitled to, and may exact from the lessee all the rents thereafter accruing from said property; and the fact that the lessee has executed and delivered to the debtor his negotiable promissory notes covering the rent to become due for the whole of the unexpired term of the lease, will not exonerate him from liability to the seizing creditor, for the rents accruing subsequent to the seizure. * * * A seizure under fi. fa. of property bearing rents includes a seizure of the rents."

Under this authority it is clear that upon the seizure it was not only Williams' right but his duty to attorn to Crawford, Jenkins & Booth, Limited.

In Lesseigne vs. Cedar Grove Realty Co., 150 La. 641, 91 So. 136, the Supreme Court held that the purchaser of immovable property in a conventional sale is entitled to the rents accruing on the property from the date of purchase and to any rent note that may have been given to represent such rents.

In Anderson vs. Comeau, 33 La. Ann. 1119, it was held that:

"The seizure of immovable property vests in the sheriff the right to receive the fruits or rents from the date of seizure, for the benefit of the seizing creditor.

"An unrecorded act of lease of real estate produces no legal effect as to third persons.

"The lessee of immovable property, under an unrecorded lease, is liable to the seizing creditor for rent accruing after seizure, though he has paid it to the lessor by anticipation, or furnished negotiable notes for it. * * *

"The lessee of immovable property, under an unrecorded lease, in case of seizure, has the right to claim the dissolution of the lease; but, if he remains in possession, a tacit reconduction results from it in favor of the seizing creditor."

In that case the court further said:

"That, in such case, the effect of the seizure, as between the lessor and the lessee, by reason of the disturbance of the enjoyment of the thing leased by the latter, is to dissolve the lease, and to give him the right to abandon the property, and to claim from the lessor the restitution of the rents which may have been paid in advance."

The seizure and sale of the leased premises dissolved the lease and terminated the relation of lessor and lessee between the parties, and left defendant free to attorn to the new owner of the premises.

We find no error in the judgment appealed from, and accordingly it is affirmed.