925 So.2d 683 (2006)
Timothy L. PAGE, Charlotte Canerday Page and Ronald D. Canerday, Plaintiffs-Appellants,
v.
CITY OF WINNFIELD and State of Louisiana, through the Military Department of the State of Louisiana, Defendants-Appellees.
No. 40,747-CA.
Court of Appeal of Louisiana, Second Circuit.
March 10, 2006.
*684 Culpepper & Carroll, PLLC, by Bobby L. Culpepper, Teresa C. Carroll, Jonesboro, for Appellants.
Keyser & Associates, L.L.C., by Gary L. Keyser, Baton Rouge, Office of the Adjutant General by Cpt. Gary C. Mooney, Asst. Staff Judge Advocate, for Appellees, State of Louisiana and Military Department, State of Louisiana.
Corkern & Crews, L.L.C., Natchitoches by Ronald E. Corkern, Jr., for Appellee, City of Winnfield.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This represents the second suit between plaintiffs-appellants, Timothy L. Page, Charlotte Canerday Page and Ronald D. Canerday[1] ("the Pages"), and defendant-appellees, the City of Winnfield and State of Louisiana, through the Military Department of the State of Louisiana ("the City"), seeking ownership of the Winnfield Armory and a right to claim rental payments due from the City of Winnfield and State of Louisiana. A hearing was held on April 19, 2005, and evidence presented. Reasons for Judgment and Judgment were handed down eight days later, and the district court denied the exceptions of no cause of action and no right of action, but granted the exception of res judicata and exception of prescription in favor of the City. Accordingly, the trial judge ordered this matter dismissed. From this ruling, the Pages appeal. An answer to the appeal was filed. For the reasons set forth herein, we reverse in part, affirm in part and remand.

FACTS[2]
The basis of the Pages' claim involves a 1948 lease of real property from Tremont Lumber Company ("Tremont") to the City of Winnfield. Then, in 1949, the City of Winnfield sublet the same land to the Military Department. The sublease called for a 99-year term and a minimal monetary consideration ($1 per year) for the construction and operation of a National Guard Armory for the City. The additional consideration for this agreement was the economic and civil benefit granted to the community through the presence of the Armory and its assigned unit.
The Pages claim that Tremont sold them the land on which the Armory was located in 1987. The lease and sublease, which were both recorded, state that they would only terminate prior to the year 2047 if the property was not used for military purposes for any five (consecutive)-year period or for non-payment of rent and taxes. The City claims no such condition ever arose and, to date, no significant *685 portion of the Armory has been removed or reassigned; and, therefore, it remains active on a "day to day" basis. The first filed suit claiming ownership of this property was filed by Ronald D. Canerday against the City of Winnfield on November 6, 1989. The suit alleged that the City had not complied with the terms and conditions of the sublease and had not made the required rental payments. Accordingly, Ronald Page, in that suit, argued that he was entitled to an order of immediate eviction of the City.
On June 26, 1995, the (first) suit between these parties was dismissed with prejudice and made retroactive to the trial judge's reasons for judgment, which were entered on April 28, 1994. Shortly prior to this dismissal, Ronald Canerday's wife, Nina, sold her undivided one-half interest in the property to his sister, Charlotte, and her husband, Timothy.
In the suit filed on September 3, 2003, by the Pages against the City (the instant suit), the plaintiffs alleged that they are the owners of the property which is the subject of this suit and alleged several violations of the 1948 lease agreement, including, inter alia, that no "federal" installation was ever built (as required by the original agreement), that the original lease was improperly authorized by the City's mayor, that rent payments had not been made since the Canerdays purchased the property, that taxes had not been paid and that no "federal installation" had been built on the property, as required by the lease.
The City objected to the instant suit on several grounds, challenging the Pages' position in the two suits and the dismissal of the first suit with prejudice and it cited related facts and jurisprudence. The City filed exceptions of res judicata, no right/ cause of action and prescription, arguing, inter alia, that the Pages were not the successors in interest to the Tremont lease and have no legal interest in the land.
On April 27, 2005, the trial court denied the City's exceptions of no right and no cause of action; however, it did rule that the appropriate requirements for res judicata had been satisfied. In addition, the court held that "[t]he petition alleges a breach of the lease obligation based upon conduct occurring over ten years before the filing of the instant suit," and, therefore, ruled that prescription had tolled. Accordingly, the trial court dismissed the case. From this ruling, the Pages appeal.

DISCUSSION

Res Judicata
The Pages begin their brief by giving a thorough recitation of the principles of res judicata. See, generally, La. C.C.P. arts. 927 and 931, LSA-C.C. art. 3499 and La. R.S. 13:4231 (see, infra). They cite Fine v. Regional Transit Authority, 95-2603 (La.App. 4th Cir.6/26/96), 676 So.2d 1134, for "a good discussion of these articles." The Pages also note that the doctrine of res judicata was changed, effective January 1, 1991, and that no retroactivity should be granted to suits filed prior to this legislation. Former (res judicata) article 4231 stated, in part:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
The Pages assert that, under the "old doctrine" (pre-1991 law), at the time this case was filed, res judicata did not apply because there were different parties involved in both suits as plaintiffs and because *686 the specific causes set forth in each respective set of pleadings were different. More to the point, they contend that the initial cause of action was for eviction for failure to pay rent, whereas the current petition alleges certain other violations of the lease terms.
Even if the post current law on res judicata applies, the Pages assert that the requirements for the doctrine to apply have not been met. The "new doctrine" of res judicata (current law), incorporated through La. R.S. 13:4231, states:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Interpreting the aforementioned statute, the supreme court, in McClendon v. State, Dept. of Transp. and Development, 94-0111 (La.9/6/94), 642 So.2d 157, stated:
Under former Section 4231, this Court held that `in order for res judicata to apply, the thing demanded in the second action must be the same as the thing demanded in the first action which has been concluded by a definitive judgment; the demand must be founded on the same cause of action; and the demand must be between the same parties, formed by them against each other in the same quality.' (Citation omitted.)
The Pages assert that, under current law, three of the four elements are not satisfied in the instant case. They argue that the parties are different in both suits, that no judgment or determination has been reached and that the causes of action in both suits are not the same.
The Pages further argue that the second suit, filed September 6, 2003, should not have been dismissed under the new rules of res judicata because the first suit was filed November 6, 1989 (prior to the new rules). Accordingly, for the same reasons set forth in the pre-1991 law, the Pages argue that the elements of res judicata are not met; and, therefore, the trial court's ruling was erroneous.
The City responds that the Pages' res judicata arguments "lack merit" and points out that the Pages admit in their brief that res judicata would not have applied at the time the initial suit was filed because there existed "different parties involved in the same suit ... and the pleadings are different." It also points out that the initial and present suits arise out of the same foundation and transaction, i.e., the underlying leases and eviction of the City and Military Department. The City states that this case is simply the Pages trying to relitigate the same subject matter, which is strictly prohibited by res judicata.
The City next contends that the Pages' argument that the second suit, filed September 6, 2003, should not have been dismissed under the new rules of res judicata because the first suit was filed November 6, 1989 (prior to the new rules), is misplaced. *687 It points out that the issue on appeal in the case sub judice revolves around the dismissal of the second suit, not the first.
The City further states that the judgment of the trial court should be affirmed by this court based on the facts and the applicable jurisprudence. It cites La. R.S. 13:4231, supra, stating that the dismissal of the first case is conclusive between the parties, even where the same parties, their successors or others appear, so long as they share the same "quality" as parties. Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978). In the instant case, the City points out that Mr. Canerday's wife, Nina, sold her undivided one-half interest in the property "which did not include the leases which plaintiffs have no legal interest, just prior to the judgment of dismissal on June 26, 1995." This interest in land was sold to Mr. Canerday's sister, Charlotte, and her husband, Timothy; however, the City asserts that, under the law, they are treated as the same parties to the first suit.
The City cites Mandalay Oil & Gas, L.L.C. v. Energy Develop. Corp., 01-0993 (La.App. 1st Cir.8/4/04), 880 So.2d 129, writ denied, 04-2426 (La.1/28/05), 893 So.2d 72, for the proposition that the preclusive effect of res judicata binds the parties to the action and the non-parties, deemed "privies," in any one of the following circumstances: (1) the non-party is a successor in interest of a party; (2) the non-party controlled the prior litigation; or (3) the non-party's interests were adequately represented by a party to the action, who may be considered the "virtual representative" of the non-party because the interests of the two parties are so closely aligned that they hold the same "quality" as parties. It points out that, just prior to the dismissal of the first suit in 1995, Ronald Canerday's wife, Nina, sold her interest in the subject property to Ronald's sister and brother-in-law. The City argues that they are the same "quality" of parties, and are, therefore, effectively the same party trying to relitigate the same issues. In summation, per Welch, supra, and La. R.S. 13:4231, supra, the City argues that the parties' claim to the instant suit are precluded by res judicata and the trial judge was correct in so ruling. We disagree.
Our review of the record reflects that res judicata does not apply to this case. As stated in Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210, the doctrine of res judicata is stricti juris, meaning that any doubt concerning its application must be resolved against its application. Our review of the record evidences that, due to the failure to pay rent, there has been an ongoing violation of the lease in this case. The record reflects that the Pages filed suit to evict for failure to pay rent on November 6, 1989, and that action was dismissed on June 26, 1995, after which the City paid $12 to cover the back rental. The court in the first case granted an exception of no cause of action because the petition did not allege "adequate notification of ownership; adequate attempts at collection; or failure to comply with the provisions of the lease as to cancellation due to non-use." The current suit was filed to evict for a violation of the lease, namely, the failure to pay the $1 rent, the ad valorem taxes and special assessments due to the land as well as special considerations having not been fulfilled (i.e.-building of a federal installation, etc.).
We agree with the Pages that res judicata does not apply in this case. The initial suit was filed prior to the 1990 amendment in res judicata laws; and, accordingly, "the more stringent requirements and elements of those amended provisions *688 are inapplicable and the subsequent claim would not have been precluded under the applicable law prior to said amendments." We agree with this statement. In our view, these suits cannot be precluded by res judicata as they represent separate causes of action and the thing demanded is different. As stated, supra, the first suit filed by the Pages was based on rental payments that were left in arrears at that time. To the contrary, the current suit is for delinquent rental payments and lease violations which have occurred since that time in this ongoing lease.[3] As stated by the trial court in its reasons:
This [the trial] court finds the appropriate elements of the Exception of Res Judicata have been met for any breach or claim existing before June 26, 1995. (Emphasis ours.)
Accordingly, we find that the "second" suit filed by the Pages, although similar in quality, is a separate cause of action, seeking rental payments for a different period in this ongoing lease. Accordingly, we rule that res judicata does not apply in this suit.

Prescription
The Pages next address the issue of prescription in this case. They assert that the trial court was in error in concluding that the claims for rent (among other claims in their petition) were prescribed. The Pages cite La. C.C. 3494, which provides that an action for arrearages or rent is subject to a liberative prescription of three years. Liberative prescription would, therefore, not apply to any claims of the plaintiff for rentals which accrued within three years from the date of filing the second suit. We agree. For these reasons, we find that the trial court was incorrect in ruling that the Pages' claims for rent had prescribed.

No Cause and No Right of Action
Since we have ruled that the trial court was in error in dismissing the suit on the issues of res judicata and liberative prescription, we must address the issues of no right and no cause of action. Our review of the record leads us to conclude that the Pages do have a right of action and a cause of action in the case sub judice.
The argument of the City, in its answer to the appeal, is that successors in title to land encumbered by a pre-existing long term lease have no cause of action to raise the claims now raised in this suit. To put it more simply, the City argues that only Tremont can bring this cause of action. The City states that the trial court failed to hold that the Pages have no cause or right of action because they have no identifiable, legal rights to the subject matter at issue in this case. It contends that, in order for the Pages to have any real right in the subject matter of this case, they must establish privity of contract, not merely naked title to the property obtained through descendants in title of the Tremont estate. In summation, because the Pages have not shown privity of contract, the City urges that they have no cause and no right of action. We disagree.
In Prados v. South Central Bell Telephone Co., 329 So.2d 744 (La.1975), the court stated, inter alia:

Not only servitudes, but Leases and all other rights, Which the owner had imposed *689 on his land before the alienation of the soil, form real obligations which Accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or Bona fide purchaser.' La. C.C. art. 2015.
...
In recent years, we have consistently classified predial leases as involving personal rights, rather than real rights. See Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341 (1964); Harwood Oil and Mining Co. v. Black, 240 La. 641, 124 So.2d 764 (1960); A. Yiannopoulos, Louisiana Civil Law Treatise-Property, s 95, pp. 275-278 (1967). When, however, the lessor sells property during the term of a recorded lease, the purchaser in the absence of a contrary stipulation is bound by the obligations of the lessor. LSA-C.C. Arts.2015, 2733; Spence v. Lucas, 138 La. 763, 70 So. 796 (1915); Walker v. Vanwinkle, 8 Mart. (N.S.) 560 (1830). In the absence of a contrary stipulation, the new owner is likewise entitled to the rent accruing subsequent to his acquisition, LSA-C.C. Arts.1902, 2461, 2490; Carmouche v. Jung, 157 La. 441, 102 So. 518 (1924); Lesseigne v. Cedar Grove Realty Co., 150 La. 641, 91 So. 136 (1921); 26 La.L.Rev. 107.
...
`Ordinarily the sale of a thing will pass all such things as are directly incident to it, and necessary to its enjoyment. Civil Code, art. 2461. The lessee is liable on the covenants of his lease, and to these, unquestionably, plaintiff is subrogated from the date of his purchase. By the use of the words right in, to, or under the lease, the plaintiff did not become an assignee of damages of date prior to the sale.... It was not an accessory right, which passed like a right of servitude, for instance, without description of, or reference to, the claims. The property transferred is described. We cannot presume that there were additional rights in the nature of damages, the deed being silent as to damages.'[4] (Emphasis ours.)
Prados, supra, notes that predial leases involve personal rights, rather than real rights; however, when a lessor sells property during the terms of the recorded lease, the purchaser- in the absence of a contrary stipulation- is bound by the obligations of that lessor. To this end, Prados, supra, establishes that, in the absence of stipulation to the contrary, the "new" owner is likewise entitled to the rent accruing subsequent to his or her acquisition of the land.[5]
*690 This line of jurisprudence and code provide a clear rule when applied to the facts of this case. When Tremont sold the land to the Pages, it did not state that it would continue to enforce the lease obligations and retain the right to collect the "fruit" of the property.[6] Instead, Tremont simply stated that they, the Pages, took "subject to" the lease obligations. Accordingly, for these reasons, we hold that the trial judge was correct in his ruling that the Pages have a cause of action and right of action in this case.

CONCLUSION
For the reasons set forth herein, the judgment of the trial court granting the exception of res judicata and prescription in favor of the City and against the Pages is reversed and the ruling of the trial court denying the exceptions of no cause and no right of action against the City of Winnfield and State of Louisiana, through the Military Department of the State of Louisiana, and in favor of Timothy L. Page, Charlotte Canerday Page and Ronald D. Canerday is affirmed. The matter is hereby remanded to the trial court for further proceedings. Costs of this appeal are assessed to the City of Winnfield and State of Louisiana, through the Military Department of the State of Louisiana.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
NOTES
[1] We note at this point that the only plaintiff in the first suit between these parties was Ronald Canerday. The inter-relatedness of the other plaintiffs to the case sub judice is discussed, infra.
[2] This court notes that, of the three appellate briefs filed, only one provided a cogent, complete "Facts" section.
[3] There was, allegedly, a $99 pre-payment (or complete satisfaction) of rent by the Military Department which occurred after the "first" suit between these parties. We note some confusion regarding this alleged pre-payment. In brief and during oral argument, it was unclear whether this money was paid to the City and/or the Pages. We find this issue better suited for the fact finder, as our review of this question, on this record, appears to be incomplete.
[4] We note that this case was reversed on rehearing on other grounds. The reversal was predicated on the fact that, at the time the property was acquired by the plaintiff in Prados, the lease had expired. We do not have that factual situation in the case sub judice, where the lease was fully functional and ongoing when it was acquired by the Pages.
[5] See also, 29 La. L.Rev. 101, 107, which states, in part:

The lessee who holds under a recorded lease is protected in his possession when the property is sold to another during the term of the lease. The recorded lease is a real obligation upon the land which accompanies it into the hands of the new owner, who is entitled to the rent subsequently accruing, and like the previous owner, liable to the lessee if he evicts him. [Citations/footnotes omitted.]
[6] See also, Louisiana Civil Code Article 483, which states:

In the absence of rights of other persons, the owner of a thing acquires the ownership of its natural and civil fruits.